GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

WAYNE R. WAGNER                10012-0
   wwagner@goodsill.com
DEBORAH A. DICRISTOFARO        11756-0
   ddicristofaro@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawaiʻi 96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Plaintiff
Nautilus Insurance Company

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY,<br><br>       Plaintiff,<br><br>   vs.<br><br><br>C&C FARMLANDS LLC,<br><br>       Defendant. | CIVIL NO.  25-cv-00373 (DECLARATORY JUDGMENT)<br><br>COMPLAINT FOR DECLARATORY JUDGMENT; SUMMONS |

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes now Plaintiff NAUTILUS INSURANCE COMPANY ("NAUTILUS"), by and through its counsel, GOODSILL ANDERSON QUINN & STIFEL, for its Complaint for Declaratory Judgment against the above-named Defendant, and alleges and avers as follows:

## I.    PARTIES, JURISDICTION AND VENUE

1.    This case involves an action for declaratory relief and to resolve an actual controversy between the parties as set forth herein.

2.    Plaintiff NAUTILUS is, and was at all relevant times herein, a company organized under the laws of the State of Arizona and with its principal place of business in the State of Arizona.

3.    Upon information and belief, Defendant C&C FARMLANDS LLC ("C&C") is and was, at all relevant times herein, a Hawaiʻi limited liability company with its principal place of business in Honolulu, Hawaiʻi, and doing business in the State of Hawaiʻi.

4.    There is complete diversity of citizenship between NAUTILUS and C&C, and the amount in controversy herein exceeds $75,000.  Accordingly, this Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332.

5.    NAUTILUS seeks a declaration by this Court pursuant to 28 U.S.C. § 2201 that it has no obligation under the following Commercial General

Liability Policies issued by NAUTILUS, NN855603 (09/28/2017-9/28/18) and EN757575 (from 10/05/2018 until cancelled) (hereinafter referred to as "Policies"), to defend or indemnify C&C for claims asserted against C&C in the lawsuit captioned *WKK LLC vs. C&C Farmlands, LLC et al.*, Civ. No. 1CCV-25-0000953, currently pending in the First Circuit Court, State of Hawai'i ("Underlying Lawsuit").

6.    There is an actual and continuing controversy between NAUTILUS and C&C, in that C&C alleges that NAUTILUS is obligated, under the aforementioned Policies, to defend and indemnify C&C against the claims asserted in the Underlying Lawsuit.

7.    All or a substantial portion of the events giving rise to this action occurred within Honolulu County in the State of Hawai'i.

8.    Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## II.    PROCEDURAL HISTORY OF UNDERLYING LAWSUIT AND FACTUAL ALLEGATIONS IN THE COMPLAINT

9.    On June 9, 2025, WKK filed the Underlying Lawsuit, entitled *WKK LLC vs. C&C Farmlands, LLC et al.*, Civ. No. 1CCV-25-0000953, pending in the First Circuit Court, State of Hawai'i, against C&C, CDK Farms ("CDK"), Malako Farms ("Malako")  (C&C, CDK, and Malako are collectively known as the "Entity Defendants"), HUI 99 LLC, Deborah Lui-Anderson ("Ms. Lui-Anderson"),

Calvin W. Lui ("Mr. Lui"), Larry Ordonez ("Mr. Ordonez"), and Conrado C. Valdriz ("Mr. Valdriz"), (collectively "Underlying Defendants").  *See* Underlying Lawsuit, Dkt. 1 ("Underlying Complaint").

      10.    Consistent with the above facts, the Underlying Complaint alleges the following:

A.    C&C is a Hawai'i limited liability company, and that, at all relevant times, C&C had and has three equal members: Plaintiff WKK and Defendants CDK and Malako.  Underlying Compl. at ¶ 3.  Ms. Lui is alleged to be, at all relevant times, a member of CDK, *id*. at ¶ 8, Mr. Lui is alleged to be, at all relevant times, a member of CDK, *id*. at ¶ 9, and Mr. Ordonez and Mr. Valdriz are alleged to be, at all relevant times, members of Malako, *id*. at ¶¶ 10-11.

B.    On November 3, 2008, C&C was established as a member-managed LLC through Articles of Organization signed by two of its initial members, CDK and Malako, with the Articles of Organization publicly recorded on November 12, 2008.  *Id*. at ¶ 17.  C&C was created to assist in the development of agricultural subdivisions, notably the Kunia Loa Ridge Farmlands.  *Id*. at ¶ 18.

C.    On July 13, 2009, C&C admitted WKK's predecessor as a third member, and the parties executed the First Amended Operating

Agreement ("First C&C Amendment"), which provided that each of the three members held an equal 33-1/3% ownership interest. *Id*. at ¶ 19.

D.   In 2010, C&C acquired approximately 854 acres of former plantation land in Kunia, O'ahu, with the intent to subdivide and sell lots ranging from 5 to 35 acres to small-scale farmers. *Id*. at ¶ 20. C&C ultimately subdivided the Kunia Loa Ridge Farmlands into 99 separate lots owned by C&C. *Id*. at ¶ 21.

E.   WKK secured approximately $8,000,000 in funding for C&C via a Loan Agreement by WKK's principal, Wallace K. Kazama. *Id*. at ¶ 22. The Loan Agreement was subsequently amended on November 22, 2010 and on June 28, 2011. In the June 28, 2011 Amendment, the parties to the Loan Agreement (namely, C&C and Wallace K. Kazama) agreed that C&C would be converted from a member-managed to a manager-managed LLC, with Wallace Kazama to serve as Manager. *Id*. at ¶ 23.

F.   On July 19, 2011, the three members of C&C (CDK, Malako, and WKK) are alleged to have signed the Second Amended Operating Agreement (Second C&C Amendment), transitioning C&C from a member-managed to a manager-managed structure. *Id*. at ¶ 24. Under the Second C&C Agreement, WKK was designated as Manager, with

4

removal requiring a majority vote of the members, pursuant to Hawaiʻi Revised Statutes § 428-404.  *Id*. at ¶ 25.  On October 5, 2012, CDK and Malako, purporting to act by majority vote, improperly removed Wallace Kazama as Manager of C&C and appointed Mr. Ordonez as his successor, without WKK's consent.  *Id*. at ¶ 26.

G.   Despite the change in management, on December 12, 2013, CDK, Malaka, and WKK entered into a Partner Lots Agreement, which reserved certain lots for distribution to the partners only after all creditors were paid, and prohibited any sale or transfer of the reserved lots without unanimous written consent of all members.  *Id*. at ¶¶ 27-28.  The second paragraph of the Partner Lots Agreement states that Lots 10 and 99 are to be reserved lots for WKK LLC:

> The following "Partner Lots" shall not be sold, but shall be reserved and distributed to the Partners upon completion of the Kunia Loa Ridge Farmlands (the "Project"), after all creditors have been paid and provided that the requirements of Hawaiʻi Revised Statutes Section 428-506 and 428-806, as applicable and any all other applicable laws have been met[.]

5

*Id.* at ¶30.

H.   On January 7, 2014, CDK and Malako signed and ratified a Third Amended Operating Agreement ("Third C&C Amendment") without WKK's consent. *Id.* at ¶ 33.

I.   In or around January 2014, C&C took out another loan that replaced the WKK's loan to the partnership. *Id.* at ¶ 34. On May 20, 2016, counsel for C&C informed WKK's counsel that: the outstanding balance for the new loan was $2,599,364, that C&C intended to sell 30 acres of the reserved Partner Lots to repay this loan, as well as to cover taxes, litigation, and operational costs, and the company was also considering selling agreements of sale to expedite fundraising. *Id.* at ¶ 35. The same day, WKK objected, explicitly refusing to consent to any sale of its reserved Partner Lots. *Id.* at ¶ 36.

J.   Notwithstanding the restriction in the Partner Lots Agreement requiring unanimous written consent of all members of the Company to modify the agreement and sell any of the Partner Lots, on or about September 29, 2021, C&C improperly sold and assigned the lease interest in Lot 99 to HUI 99 LLC, whose member-manager is Mr. Ordonez. *Id.* at ¶ 40. The sale was improper because, among other reasons, at no point did WKK consent to the sale of Lot 99, *id.* at ¶¶ 42-43, conditions

precedent like the Project being completed and all the creditors being paid, had not yet occurred, *id*. at ¶ 39, and Mr. Ordonez engaged in self-dealing as he was acting as both the manager of C&C and Hui 99 at the time of the sale, *id*. at ¶ 41.

K.   The sale of Lot 99 violated the Partner Lots Agreement and was conducted fraudulently and in bad faith, *id*. at ¶ 44, and deprived WKK of its reserved property interest in Lot 99, *id* at ¶ 45.

L.   WKK declares that it has elected to pursue the full fair market value of the lot as monetary damages, "in an amount no less than $2,669,603.34, representing the fair market value of Lot 99 wrongfully sold in violation of the Partner Lots Agreement". *Id*. at ¶ 50.

M.   CDK, Malako, and Mr. Ordonez continue to hold and/or control Lot 10 and may seek to sell or transfer it in the future, therefore, WKK seeks declaratory relief affirming its right to Lot 10 and injunctive relief to prevent any sale, transfer, or encumbrance of the lot without WKK's written consent. *Id*. at ¶¶ 51-53.

N.   The other Members withheld financial information and that the other members improperly diverted funds to their benefit to the exclusion of WKK, *id*. at ¶¶54-58, and the Defendants in the Underlying Lawsuit committed other fraudulent conduct causing WKK to suffer financial

7

harm, including improper self-dealing at prices well below fair market value, *id*. at ¶¶ 59-64.

11.    Based on these allegations, WKK asserts a claim for breach of contract against C&C, CDK, and Malako, *id*. at ¶¶ 65-70, breach of fiduciary duty, violation of HRS § 428-409 against CDK Farms, Malako Farms, Mr. Ordonez, *id*. at ¶¶ 71-77, fraudulent misrepresentation and fraudulent concealment against all of the Underlying Defendants, *id*. at ¶¶ 78-84, conversion against C&C and Mr. Ordonez, *id*. at ¶¶ 85-88, unjust enrichment against all Underlying Defendants, *id*. at ¶¶ 89-92, civil conspiracy against all Underlying Defendants except for Hui 99, *id*. at ¶¶ 93-96, piercing the corporate veil/alter ego liability against Mr. Ordonez, Ms. Lui-Anderson, Mr. Lui, and Mr. Valdriz, *id*. at ¶¶ 97-101, Request for Records; Violation of HRS § 428-408 claim against C&C, *id*. at ¶¶ 102-109, Dissolution and Winding Up against C&C, CDK, Malako, and Larry Ordonez, *id*. at ¶¶ 110-114.

12.    In its Underlying Complaint, WKK requests an award of money damages, attorneys' fees and costs, as well as declaratory and injunctive relief including:

> An Order requiring C&C Farmlands and/or its present manager to provide a complete accounting and produce documents and information regarding the C&C Farmlands Partnership, in accordance with HRS § 428-408.

An order preventing Defendants, or anyone acting in concert with them, from selling, transferring, assigning, or encumbering Lots 10 and 99.

Equitable relief, in the form of a Special Master or otherwise as deemed appropriate by the Court, to oversee the finances and operations of C&C Farmlands to ensure that the Company is complying with the operating documents, the Court's order(s), and relevant State laws;

An order dissolving C&C Farmlands and distributing assets pursuant to HRS § 428-80I et seq.

Underlying Compl. at pg. 18.

13.    On July 1, 2025, a General Liability Notice of Occurrence/Claim was sent to Nautilus on behalf of C&C.

14.    Because the claim appeared to only have been tendered on behalf of C&C, on July 28, 2025, NAUTILUS sent individual letters to CDK, Malako, Ms. Lui-Anderson, Mr. Lui, Mr. Ordonez, and Mr. Valdriz, asking them to confirm in writing whether or not they also intend to tender the claims to NAUTILUS.  The letters also requested, in consideration of the pending Underlying Lawsuit, that CDK, Malako, Ms. Lui-Anderson, Mr. Lui, Mr. Ordonez, and Mr. Valdriz provide a response in writing within 14 days.  The letters also stated, "In the event we do not receive a response, we will assume that a tender is not being made at this time."  On August 26, 2025, follow-up letters were sent to CDK, Malako, Ms. Lui-Anderson,

Mr. Lui, Mr. Ordonez, and Mr. Valdriz asking whether or not they intended to tender the defense of their claim.

15.    Upon information and belief, CDK, Malako, Ms. Lui-Anderson, Mr. Lui, Mr. Ordonez, and Mr. Valdriz have not provided a written response indicating their intent to tender their claims to NAUTILUS.[1]

16.    On July 29, 2025, NAUTILUS issued a letter to C&C communicating that Nautilus would provide a defense to C&C in the Underlying Lawsuit subject to a full and complete reservation of its rights under the Policies.

## III.    THE NAUTILUS CGL POLICY

17.    Commercial General Liability Policies were issued by NAUTILUS to Named Insured "C&C Farmlands LLC" for the periods from September 28, 2017 to September 28, 2018 (Policy No. NN855603) and October 5, 2018 until cancelled (Policy No. EN757575).

18.    Each Policy contains commercial general liability coverage with $2,000,000 policy aggregates, and an occurrence limit of $1,000,000.

19.    Under the Insuring Agreement, NAUTILUS will have the right and duty to defend the insured(s) against any "suit" seeking damages for "property

---

[1] In the event that CDK, Malako, Ms. Lui-Anderson, Mr. Lui, Mr. Ordonez, and Mr. Valdriz tender the defense of their claims, Nautilus intends to have the complaint amended to add them as Defendants.

damage" or "bodily injury", but only if the "property damage" or "bodily injury" is caused by an "occurrence" that takes place during the policy period. An "occurrence" is specifically defined to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

20.    The Insuring Agreement provides in relevant part:

**SECTION I - COVERAGES**

**COVERAGE A-BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

   a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result.
        ….

   b.  This insurance applies to "bodily injury" and "property damage" only if:

      (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

      (2)  The "bodily injury" or "property damage" occurs during the policy period; and

11

(3) Prior to the policy period, no insured listed under Paragraph 1. of Section II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

. . .

d.   "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph 1. of Section II – Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1) Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

(2) Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

(3) Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*****

21.    The Policies also contain several applicable exclusions.  One such exclusion is the "Expected or Intended Injury" exclusion, which provides, in relevant part, as follows:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured….

\*\*\*\*\*

22.    The Policies also contain a "Contractual Liability" exclusion, which provides, in relevant part, as follows:

**2.    Exclusions**

This insurance does not apply to:

….

**b.  Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.  This exclusion does not apply to liability for damages:

(1) That the insured would have in the absence of the contract or agreement; or

(2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property

damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

(a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract" and

(b) Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

*****

23.    The Policies also contain an "Exclusion – Personal and Advertising Injury", which states that "COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply." Under this "Exclusion – Personal and Advertising Injury", there is no coverage for Coverage B for "personal and advertising injury", which is defined in the Policies as "injury, including consequential "bodily injury", arising out of one or more of the following offenses:" including "The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor[.]"

14

24.    The Policies also contain a punitive damages exclusion that states: "This insurance does not apply to punitive or exemplary damages."

25.    The Policies also contain an "other insurance" provision which provides that the Policies' coverage is excess over other collectible insurance. Section IV(4)(b)(1) of the Policies state, in relevant part:

> (1) This insurance is excess over:
>
>> (a) Any of the other insurance, whether primary, excess, contingent or on any other basis:
>>
>>> (i)    That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";
>>>
>>> (ii)  That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;
>>>
>>> (iii) That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or
>>>
>>> ….
>>
>> (b) Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.
>
> (2) When this insurance is excess, we will have no duty under Coverages **A or B** to defend the insured against any "suit" if any other insurer has a duty

15

> to defend the insured against that "suit". If no
> other insurer defends, we will undertake to do so,
> but we will be entitled to the insured's rights
> against all those other insurers.

*****

## IV.    STATEMENT OF CLAIM

26.    NAUTILUS repeats, reiterates and realleges each and every allegation contained in paragraphs 1-25 above as though fully set forth herein.

27.    Coverage under the NAUTILUS Policies for the claims alleged against C&C in the Underlying Lawsuit, which is currently pending in the Circuit Court of the First Circuit of the State of Hawaiʻi, is precluded on several grounds as set forth below.

### A.    There Is No Coverage Because the Underlying Complaint Does Not Allege an "Occurrence"

28.    By design, commercial general liability or "CGL" policies only cover *accidental* harm, not intentional harm.  This limitation on coverage is apparent in the Policies' "occurrence" requirement, which provides that:

> **This insurance applies to "bodily injury" and "property damage" only if**:
>
> (1) **The "bodily injury" or "property damage" is caused by an "occurrence"** that takes place in the "coverage territory";
>
> (2) The "bodily injury" or "property damage" **occurs** during the policy period;

16

(Emphases added).

*****

29.    "Occurrence" is expressly defined in the Policies to mean "<u>an</u> <u>accident</u>, including continuous or repeated exposure to substantially the same general harmful conditions." (Emphasis added).

30.    Under Hawaiʻi law, "an 'accident' is an 'unintended and unforeseen injurious occurrence; something that does not occur in the usual course of events or that could not be reasonably anticipated'". *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 155 Hawaiʻi 108, 122, 557 P.3d 837, 851 (2024) (quoting Accident, Black's Law Dictionary (11th ed. 2019)). To determine whether a claim arises from an "accident" within the coverage of a liability insurance policy, Hawaiʻi courts view the facts underlying the claim objectively, from the standpoint of the insured. *Hawaiian Holiday Macadamia Nut Co., Inc. v. Indus. Indem. Co.,* 76 Hawaiʻi 166, 170, 872 P.2d 230, 234 (1994).

31.    As the Hawaiʻi Supreme Court recently acknowledged, the purpose of the "occurrence" requirement is to ensure that liability policies only protect insureds from "fortuitous" events that cause harm to others, i.e., accidents. There is a clear public policy for this limitation on coverage. The Hawaiʻi Supreme Court explained: "Fortuity allows insurers to spread the risk of unplanned incidents over a pool of customers at calculated rates. **It also prevents policyholders from**

17

**committing intentional torts but being immune to consequences because they purchased insurance**." *Aloha Petroleum, Ltd. v. Nat'l Union Fire Ins. Co. of Pittsburgh*, 155 Hawaiʻi 108, 122, 557 P.3d 837, 851 (2024) (emphasis added).

32.    Here, the Underlying Complaint only alleges intentional misconduct by C&C and the Underlying Defendants.

33.    Specifically, the gravamen of the Underlying Lawsuit is that the Underlying Defendants engaged in a conspiracy to convert the Reserved Lots that had been originally intended for WKK for their own uses, and in violation of the contractual Partner Lots Agreement with WKK.

34.    WKK alleges that "C&C Farmlands, CDK Farms, and Malako Farms breached the Partner Lots Agreement by selling [WKK's] reserved lots without [WKK's] consent, in direct violation of its terms", Underlying Compl. at ¶ 68; that all of the Underlying Defendants "knowingly misrepresented their intentions regarding the reserved lots", "coerced [WKK] to execute the Partner Lots Agreement", and "actively concealed the intended sale of [WKK's] reserved lots while misrepresenting their compliance with the Partner Lots Agreement", *id*. at ¶¶ 73-77, that "CDK Farms LLC and Malako Farms LLC were mere instrumentalities of their individual members, who used the LLCs to commit fraud and avoid personal liability", *id*. at ¶ 98, and that "this coordinated scheme was executed with fraudulent

intent and resulted in wrongful financial gain for Defendants at [WKK's] expense", *id*. at ¶ 95.

35. Indeed, no negligent or accidental conduct is alleged in the Underlying Complaint.

36. Such alleged harm, based entirely on allegations of C&C's and the other Underlying Defendants' deliberate misconduct, is not the type of "accidental" conduct that would or should constitute an "occurrence" under the Policies and Hawai'i law.

37. The intentional nature of C&C's and the Underlying Defendants alleged harm is also evident in the types of claims asserted against them. The Underlying Complaint assert claims for breach of contract against C&C, CDK, and Malako, *id*. at ¶¶ 65-70, breach of fiduciary duty, violation of HRS § 428-409 against CDK, Malako, Mr. Ordonez, *id*. at ¶¶ 71-77, fraudulent misrepresentation and fraudulent concealment against all of the Underlying Defendants except Hui, *id*. at ¶¶ 78-84, conversion against C&C and Mr. Ordonez, *id*. at ¶¶ 85-88, unjust enrichment against all Underlying Defendants, *id*. at ¶¶ 89-92, and civil conspiracy against all of the Underlying Defendants except Hui, *id*. at ¶¶ 93-96.

38. Under the "Complaint Allegation" rule, "the duty to defend is limited to situations where the pleadings have alleged claims for relief which fall

19

within the terms for coverage of the insurance contract." *Hawaiian Holiday*, 76 Hawaiʻi at 169, 872 P.2d at 233.

39.    Because the pleadings fail to allege a claim arising from an "occurrence", there is no coverage under the Polices.

**B.    Coverage Should Be Excluded by the Policies' "Expected or Intended Injury" Exclusion**

40.    Consistent with the "occurrence" requirement, the Policies also include an "Expected or Intended Injury" exclusion, which provides:

**2. Exclusions**

This insurance does not apply to:

**a. Expected or Intended Injury**

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured….

\*\*\*\*\*

41.    Discussing this exclusion, the Hawaiʻi Supreme Court recently noted that intentional harm "'is met either by showing an actual intent to injure, or by showing the nature and character of the act to be such that an intent to cause harm to the other party must be inferred as a matter of law", *Aloha Petroleum*, 155 Hawaiʻi at 120, 557 P.3d at 849 (quoting *Tri-S Corp. v. W. World Ins. Co.*, 110 Hawaiʻi 473, 494, 135 P.3d 82, 103 (2006)), and that expected harm is harm that is "'practically certain' to occur from the insured's subjective view", *id*.

20

42.    The gravamen of the Underlying Complaint is that C&C and the rest of the Underlying Defendants intentionally harmed WKK by breaching the Partner Lots Agreement to deprive WKK of its property interests in the Reserved Lots.

43.    Because the purported harm was alleged to be expected and intended from the standpoint of C&C, coverage for this harm is excluded by the Policies' "Expected or Intended Injury" exclusion.

## C.    Coverage Under the CGL Policy is Precluded Because the Claims Do Not Arise out of "Bodily Injury" or "Property Damage"

44.    Alternatively, there is no coverage because the Underlying Lawsuit by WKK fails to assert a claim for "bodily injury" or "property damage" as those terms are defined under the Policies.

45.    "Bodily injury" is defined by the Policies as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."

46.    There is no allegation in the Underlying Lawsuit that WKK suffered any type of "bodily injury".

47.    "Property damage" is defined by the Policies as follows:

> a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the

physical injury that caused it; or

    b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

*****

48.     Likewise, there does not appear to be any allegations that WKK suffered "property damage" in the Underlying Complaint.

49.     None of these claims allege any physical injury to tangible property that would qualify as "property damage".

50.     Instead, the Underlying Complaint only alleges that WKK suffered economic damage as a result of C&C's conduct insofar as C&C allegedly deprived WKK of its right to future ownership of Reserved Lot 99.  This type of damage does not qualify as "property damage" under the Policies and Hawaiʻi law. *See also Allstate Ins. Co. v. Hui*, 57 F. Supp. 2d 1039, 1044–45 (D. Haw. 1999) ("Numerous cases have held that economic loss does not constitute damage or injury to property.").

51.     Nor do the claims allege any "loss of use of tangible property that is not physically injured."   After all, the allegations demonstrate that WKK did not yet have a right to use the Reserved Lots.  Whereas loss-of-use damages are typically

predicated on the deprivation of a current, possessory interest in the property, WKK is alleged to have only had a right to future ownership of the Reserved Lots.

52.    According to the Underlying Complaint, the Reserved Lots 99 and 10 were only supposed to be "distributed to the Partners upon completion of the Kunia Loa Ridge Farmlands (the 'Project'), after all creditors have been paid and provided that the requirements of Hawai'i Revised Statutes Section 428-506 and 428-806, as applicable and any all other applicable laws have been met".  Underlying Compl. at ¶ 38.  However, those conditions precedent allegedly had not yet occurred.  *Id*. at ¶ 39 ("The Project has never been completed, and remains incomplete.  Upon information and belief, all creditors have not been paid.").

53.    Because C&C retained ownership of the Reserved Lots, including Reserved Lot 99, WKK alleges that C&C and the other Underlying Defendants conspired to have C&C sell the Reserved Lot 99 that was allegedly intended for WKK to Hui 99 instead.  *Id*. at ¶¶ 37-49.  The Underlying Complaint also alleges that "Lot 10 remains titled in the name of C&C Farmlands" and "the Entity Defendants and Mr. Ordonez continue to hold and/or control Lot 10 and may seek to sell or transfer it in the future" even though "Under the Partner Lots Agreement, Lot 10 is expressly reserved for [WKK]".  *Id*. at ¶¶ 51-53.

54.    As these allegations show, WKK does not allege that it had a right to use of the Reserved Lots, only that it had a right to their future ownership

that was deprived by the Underlying Defendants.  WKK, therefore, does not allege that it actually suffered any loss of the use of the Reserved Lots.

55.    Because the claims alleged against the C&C are not based on "property damage" or "bodily injury" as required by the Policies, C&C is not entitled to coverage under the Policies.

### D.    Coverage Is Also Excluded by the Policies' "Contractual Liability" Exclusion

56.    Alternatively, coverage under the Policies for the claims alleged in the Underlying Lawsuit is also precluded by the "Contractual Liability" exclusion.

57.    The "Contractual Liability" exclusion excludes coverage for "'Bodily injury' or 'property damage' for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement."

58.    The "Contractual Liability" exclusion bars coverage for any claims that arise out of contract.  This includes not just breach of contract claims, but also other claims that are premised on a contract, whether or not they sound in tort or otherwise.  For example, in *State Farm Fire & Cas. Co. v. GP W., Inc.*, the court observed:

> Courts applying Hawaii law have consistently held that contract and contract-based tort claims are not covered under commercial general liability ("CGL") policies. *See, e.g. Burlington*, 383 F.3d at 949 (citing *WDC Venture v. Hartford Accident and Indem. Co.*, 938 F. Supp. 671 (D. Haw. 1996); *CIM Ins. Corp. v. Masamitsu*, 74 F.Supp.2d 975 (D. Haw. 1999); and *CIM Ins.*

> *Corp. v. Midpac Auto Center, Inc.*, 108 F. Supp.2d 1092 (D.
> Haw. 2000)) ("[O]ur holding is consistent with the line of cases
> from the District of Hawaii that hold that contract and contract-
> based tort claims are not within the scope of CGL policies under
> Hawaii law."); *United Coatings*, 518 F. Supp. 2d at 1250
> ("Contract-based claims—including claims sounding in tort
> which are predicated upon, stemming directly from, or derivative
> of, [the insured's] contracts, contracts of sales, and warranties—
> are not covered under the CGL Policy.").

190 F. Supp. 3d 1003, 1015 (D. Haw. 2016).

59.    The "Contractual Liability" exclusion excludes coverage for the

breach of contract claim that WKK asserts in the Underlying Complaint against

C&C, CDK, and Malako.  That breach of contract claim alleges as follows:

> 66. [WKK], CDK Farms, and Malako Farms entered into the
> C&C Farmlands Partner Lots Agreement on December
> 12, 2013, which explicitly prohibited the sale or transfer
> of reserved lots without unanimous written consent.
>
> 67. [WKK] fully performed its obligations under the
> Agreement.
>
> 68. C&C Farmlands, CDK Farms, and Malako Farms
> breached the Partner Lots Agreement by selling [WKK's]
> reserved lots without [WKK's] consent, in direct
> violation of its terms.
>
> 69. As a direct and proximate result of the above Defendants'
> breach, [WKK] has suffered significant financial harm,
> including the loss of its property interest.

Underlying Compl. at ¶¶ 66-69.

60.    Additionally, the "Contractual Liability" exclusion bars

coverage for the other claims against C&C.  WKK asserts additional claims for

breach of fiduciary duty, violation of HRS § 428-409, *id.* at ¶¶ 71-77, fraudulent

misrepresentation and fraudulent concealment, *id.* at ¶¶ 78-84, conversion, *id.* at ¶¶

85-88, unjust enrichment, *id.* at ¶¶ 89-92, civil conspiracy, *id.* at ¶¶ 93-96, piercing

the corporate veil/alter ego liability, *id.* at ¶¶ 97-101, Request for Records; Violation

of HRS § 428-408, *id.* at ¶¶ 102-109, and Dissolution and Winding Up, *id.* at ¶¶ 110-

114.

      61.    WKK's additional claims against C&C unequivocally stem from

C&C's and the rest of the Underlying Defendants' alleged breach of the Partner Lots

Agreement.  For example:

    A.    WKK's breach of fiduciary duty claim is based on the sale of their

Reserved Lot 99 in violation of the Partner Lots Agreement, and alleges

that "CDK Farms, Malako Farms, and Mr. Ordonez engaged in self-

dealing by selling [WKK's] reserved lots for their own benefit while

depriving [WKK] of its rightful interest."  Underlying Compl. at ¶ 74.

    B.    WKK's fraudulent misrepresentation/concealment claim alleges that all

of the Underlying Defendants "knowingly misrepresented their

intentions regarding the reserved lots", "coerced [WKK] to execute the

Partner Lots Agreement", and "actively concealed the intended sale of

[WKK's] reserved lots while misrepresenting their compliance with the

Partner Lots Agreement", causing [WKK] to suffer significant financial losses. *Id*. at ¶¶ 79-81.

C.    WKK's conversion claim alleges that "[WKK] had a vested ownership interest in the reserved lots under the Partner Lots Agreement," "C&C Farmlands, and Mr. Ordonez wrongfully exercised dominion and control over [WKK's] property by selling the reserved lots without authorization", and "[WKK] has suffered economic damages, including the loss of its property rights and any potential appreciation in value." *Id*. at ¶¶ 86-88.

D.    WKK's unjust enrichment claim stems from the alleged breach of the Partner Lots Agreement, and is based on the allegation that "Defendants have unjustly profited from the unauthorized sale of [WKK's] reserved lots." *Id*. at ¶ 90.

E.    WKK's civil conspiracy claim likewise alleges that "the Entity and Individual Defendants acted in concert with third parties to deprive [WKK] of its reserved lots." *Id*. at ¶ 94.

F.    The remaining declaratory/injunctive relief claims for piercing the corporate veil/alter ego liability against the individual Defendants Ms. Lui-Anderson, Mr. Lui, Mr. Ordonez, and Mr. Valdriz, is based on the

same alleged fraud and misuse of assets as to the Reserved Lots.  *See id*. at ¶¶ 97-101.

G.    Request for Records; Violation of HRS § 428-408 claim against C&C, *id*. at ¶¶ 102-109, Dissolution and Winding Up against C&C, CDK, Malako, and Larry Ordonez, *id*. at ¶¶ 110-114, likewise all arise from Underlying Defendants' alleged breach of the Partner Lots Agreement to sell WKK's Reserved Lot 99.

62.    Because WKK's claims against C&C all stem from its purported breach of contract, coverage for any liability arising from such claims is excluded by the above-referenced "Breach of Contract" exclusion.

E.    **There Is No Coverage for "Personal or Advertising Injury" under Coverage B of the CGL Policies**

63.    The Policies include an express "Exclusion – Personal and Advertising Injury", which states that "COVERAGE B (Section I) does not apply and none of the references to it in the Coverage Part apply."

64.    The Policies define "Personal and advertising injury" to mean, in relevant part:

> 14. "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:
>  ….
> c. The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room,

dwelling or premises that a person occupies, committed
by or on behalf of its owner, landlord or lessor;

….

\*\*\*\*\*

65.    To the extent C&C contends that it is entitled to coverage for
"Personal and advertising injury", such coverage is expressly excluded by the
Policies' "Exclusion – Personal and Advertising Injury".

**F.    There is No Coverage for Punitive Damages Under the Policies**

66.    Additionally, the Policies do not provide coverage for punitive
damages.

67.    WKK request punitive damages in its prayer for relief.
Underlying Compl. at pg. 18.

68.    The Policies contain a "Punitive or Exemplary Damages"
exclusion that provides as follows: "This insurance does not apply to punitive or
exemplary damages."

69.    Accordingly, there is no coverage for punitive damages under the
Policies.

**G.    The Policies Do Not Cover WKK's Requests for Declaratory
or Injunctive Relief**

70.    The Policies also do not provide coverage insofar as injunctive
or declaratory relief is sought in the Underlying Lawsuit.

71.     In addition to money damages, WKK seeks declaratory and injunctive relief for:

   a.     An Order requiring C&C Farmlands and/or its present manager to provide a complete accounting and produce documents and information regarding the C&C Farmlands Partnership, in accordance with HRS § 428-408.

   b.     An order preventing Defendants, or anyone acting in concert with them, from selling, transferring, assigning, or encumbering Lots 10 and 99.

   c.     Equitable relief, in the form of a Special Master or otherwise as deemed appropriate by the Court, to oversee the finances and operations of C&C Farmlands to ensure that the Company is complying with the operating documents, the Court's order(s), and relevant State laws[.]

   d.     An order dissolving C&C Farmlands and distributing assets pursuant to HRS § 428-801 *et seq.*

Underlying Compl. at pg. 18.

72.     Commercial general liability policies, like the Policies here, typically only provide coverage for money damages rather than declaratory or injunctive relief.  Consistent with this limitation, the Policies here only cover "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies."

73.     Accordingly, the Policies does not provide coverage for the injunctive and declaratory relief requested by WKK.

## H.     Other Coverage Defenses

74.    Coverage under the Policies for the claims alleged in the Underlying Lawsuit is also precluded to the extent the coverage, if any, provided by the Policies is "excess" to any other insurance available to C&C.

75.    Coverage is or may be precluded by other provisions or exclusions in the Policies.

WHEREFORE, NAUTILUS PLEADS FOR RELIEF AS FOLLOWS:

A.    For a declaratory judgment by this Court finding that NAUTILUS has no duty to defend or indemnify C&C for the claims asserted in the Underlying Lawsuit.

B.    For reimbursement of defense costs incurred by NAUTILUS in defending C&C against the claims alleged in the Underlying Lawsuit.

C.    For reimbursement of any amounts paid by NAUTILUS in judgment or settlement of the claims alleged against C&C in the Underlying Lawsuit.

D.    For NAUTILUS' attorneys' fees and costs incurred in this declaratory judgment action.

E.    For such other relief as the Court may deem just and appropriate under the circumstances.

DATED:  Honolulu, Hawai'i, September 3, 2025.


/s/ *Wayne R. Wagner*
WAYNE R. WAGNER
DEBORAH A. DICRISTOFARO

Attorneys for Plaintiff
NAUTILUS INSURANCE COMPANY